UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIVING PROOF, INC.,<br><br>            Plaintiff,<br><br>v.<br><br>JEMELLA GROUP LTD. and<br>GHD PROFESSIONAL NORTH<br>AMERICA, INC.<br><br>            Defendants. | Civil Action No.: |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Living Proof, Inc. ("Living Proof") alleges as follows:

**NATURE OF THE ACTION**

1. This action arises from threats of legal action by Jemella Group Ltd. and ghd Professional North America, Inc. (collectively, "Jemella") regarding Living Proof's use of the descriptive phrase "good hair day" and related phrases in connection with hair care products such as shampoo, conditioner and hairspray. Living Proof seeks declaratory judgment that its actions have not infringed any valid trademark rights of Jemella.

**THE PARTIES**

2. Plaintiff Living Proof, Inc. is a Delaware corporation with a principal place of business at 301 Binney Street, First Floor, Cambridge, Massachusetts, 02142.

3. On information and belief, Defendant Jemella Group Ltd. is a United Kingdom private limited company with its principal place of business at Bridgewater Place, Water Lane, Leeds, England, LS11 5BZ.

4. On information and belief, Defendant ghd Professional North America, Inc. is a California corporation with its principal place of business at 340 N Westlake Boulevard, Westlake Village, California 91362.

## JURISDICTION AND VENUE

5. This Court has personal jurisdiction over Jemella because, on information and belief, Jemella conducts or has conducted business, as well as advertises its products and services, in the Commonwealth of Massachusetts and within this judicial district, and the effects of those acts have been felt in this district.

6. Additionally, this Court has personal jurisdiction over Jemella because Jemella has threatened Living Proof in Massachusetts with allegations of trademark infringement, which give rise to this action. The effects of those threats have been felt primarily in Massachusetts.

7. This action arises under the 28 U.S.C. §§ 2201, *et seq.* This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338, as the matter in controversy involves a federal question, and the matter arises under an Act of Congress relating to trademarks.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTS

9. Living Proof is in the business of developing and selling beauty products, including shampoo, conditioner and hairspray. Living Proof's products employ multiple patented technologies and are of a very high quality. Living Proof's technologies were developed by scientists, including university professors with doctoral degrees. Living Proof's use of science and technology to create beauty products is one of its chief distinguishing features, and is a theme that runs through Living Proof's website and other advertising. Living Proof's website is located at www.livingproof.com.

10. Jemella is in the business of selling hair care implements, such as electronic hair straighteners and flat irons, as well as cosmetic hair care products.

11. On May 16, 2013, Jemella sent Living Proof the demand letter attached hereto as Exhibit A. In this letter, Jemella claimed U.S. trademark rights in the phrases GOOD HAIR DAY and GOOD HAIR DAY, EVERY DAY in connection with its hair care products, and alleged that Living Proof's use of the phrases "good hair day" and "good hair day, every day" infringed these supposed rights.

12. Specifically, Jemella's letter (i) claimed that Living Proof's use of "good hair day" and "good hair day, every day" constituted trademark infringement and unfair competition under the U.S. Trademark Act, 15 U.S.C. § 1125(a), and various unspecified state laws, (ii) demanded that Living Proof immediately cease all use of these phrases, and (iii) threatened to institute legal action in a U.S. District Court if Living Proof failed to comply with the foregoing demand. Jemella further noted that its available remedies included "injunctive relief, compensatory damages, punitive damages, disgorgement of profits, costs and attorneys' fees."

13. In subsequent correspondence, including but not limited to a letter dated May 22, 2013, Jemella asserted that Living Proof's use of the following marks would also infringe Jemella's alleged trademark rights:

Living proof. Perfect Hair Day        Living proof. Perfect Hair Day

These marks are the subject of Living Proof's approved applications for registration, namely Serial Nos. 85715850 and 85715864, both covering "hair care preparations; hair cleaning preparations; hair styling preparations." The applications were filed on August 29, 2012 and

were approved by the trademark examiner.  Jemella failed to oppose the applications when they were published for opposition purposes, and they were allowed by the Patent and Trademark Office on April 2, 2013.  As soon as Living Proof files statements of use in support of the applications, they will proceed to registration.

### Living Proof's Use of "Good Hair Day" and "Good Hair Day, Every Day"

14.     Living Proof has not used the phrases "good hair day" and "good hair day, every day" as trademarks, and has not filed any applications to register these phrases as trademarks.

15.     Living Proof has used the phrase "good hair day, every day" within the context of larger textual phrases, such as "Get a good hair day, every day (even on the go)" and "Our science promises you a good hair day, every day."  Living Proof has not capitalized any of the letters in "good hair day, every day" when using the phrase in this fashion.

16.     Living Proof has used the phrase "good hair day" as part of the larger textual phrases mentioned above.  In addition, Living Proof has used "good hair day" (without "every day") on its website, on the screens of promotional videos and in other contexts, sometimes with surrounding text and sometimes in a stand-alone fashion with the initial letters capitalized.

17.     Living Proof uses "good hair day" and "good hair day, every day" in a descriptive sense, conveying that the use of Living Proof's products will result in having hair that looks good as well as having a good day in general, and will make one feel good about oneself, every day.

18.     Living Proof is not aware of any instances of actual confusion with Jemella's alleged marks that have arisen from Living Proof's use of the phrases "good hair day" and "good hair day, every day."

19.     Living Proof prominently displays its LIVING PROOF trademark in connection with the phrases "good hair day" and "good hair day, every day."

20.     The LIVING PROOF trademark is also an integral part of the compound marks shown in Paragraph 13 above, which also include the words PERFECT HAIR DAY with the initial letters PHD bolded. The initial letters PHD are bolded in these marks to convey a commercial impression of science and academia (the Ph.D. doctorate), which are at the core of Living Proof's identity.

## "Good Hair Day" is a Common Expression

21.     The phrase "good hair day" is a common slang expression in the United States, which is widely understood to have two meanings – a day in which one's hair looks good, and a good day generally. The latter meaning has evolved as a slang term, and has been used in that manner since at least as early as the 1990s.

22.     The reference work *American Slang* (4th edition 2008) defines "good hair day" as follows:

> **good hair day** *n phr* A day when things go right: good day : *She said she was having a good hair day as she arranged the seating for the photos during the interview* (1990s+) See BAD HAIR DAY

23.     A similar entry appears in the second edition of *American Slang* (1998):

> **good hair day** *n phr* 1990s A day when things go right; good day: *She said she was having a good hair day as she arranged the seating for the photos during the interview*—Madison Eagle

24.     The phrase "good hair day" is related to "bad hair day," which refers to a day in which one's hair looks bad and also a bad day generally. See the definition of "bad hair day" in *The Facts on File Dictionary of Clichés* (3d ed. 2011) ("A day when everything seems to go wrong. The term originally meant merely that one's appearance, especially one's hair, does not look attractive. Dating from about 1980, it soon was extended to mean having a bad day.").

**"Good Hair Day" and "Good Hair Day, Every Day" Are Commonly-Used Phrases in Connection with Goods and Services Relating to Hair**

25. Many companies have used the phrase "good hair day" in connection with goods and services relating to hair.

26. A number of hair care products called "Good Hair Day" or "Good Hair Days" are featured on publicly accessible websites, including the following:

    a.    GOOD HAIR DAY brand shampoo made by DS Studio, http://www.dsstudionyc.com/store/gooddayhairshampoo.  A true and accurate image from this website is shown below:



    b.    GOOD HAIR DAY brand shampoo made by Templespa, http://www.templespa-usa.com/catalogsearch/result/?q=%22good+hair+day%22.  A true and accurate image from this website is shown below:



    c.    GOOD HAIR DAY SHAMPOO BAR and GOOD HAIR DAY CONDITIONER BAR made by Basin, http://www.basin.com/good-hair-day-shampoo-bar/ and http://www.basin.com/good-hair-day-conditioner-bar/. True and accurate images from this website are shown below:



    d.    GOOD HAIR DAYS brand hair accessories sold by Good Hair Days, Inc., http://www.goodhairdays.com/. A true and accurate image from this website is shown below:

7



<dl>
</dl>

This company owns a 1996 U.S. Registration of the mark GOOD HAIR DAYS, identified in Paragraph 42(a), below, and described at: http://tsdr.uspto.gov/#caseNumber=75060847&caseType=SERIAL_NO&searchType=statusSearch.

e. GOOD HAIR DAY brand line of shampoos and conditioners, sold on the AfterBaby.com website, http://www.afterbaby.com/scripts/prodView.asp?idproduct=76. A true and accurate image from this website is shown below:



f. GOOD HAIR DAY Products, sold on the LightInTheBox.com website, http://www.lightinthebox.com/Popular/Good_Hair_Day_Products.html

True and accurate printouts of the web pages referenced above are attached hereto as Exhibit B.

8

27. At least a dozen GOOD HAIR DAY salons, spas and other businesses focusing on hair care throughout the United States use GOOD HAIR DAY as a service mark on their websites, including:

    a. GOOD HAIR DAYS-the spa in Maryland, http://www.goodhairdaysspa.com/.

    b. GOOD HAIR DAY SALON in Virginia, http://goodhairdaysalon.com/.

    c. GOOD HAIR DAY salon in Texas, http://goodhairday.net/.

    d. the GOOD HAIR DAY SERIES (GHDS) of events, based in Connecticut, and traveling to other states, http://goodhairdayseries.com/.

True and accurate printouts of the web pages referenced above are attached hereto as Exhibit C.

28. The phrase "good hair day" is also commonly used in a descriptive manner when referring to goods and services relating to hair, or when referring to hair generally. For example, a Google search of the phrase "having a good hair day" retrieves approximately 600,000 hits.

29. There are also multiple uses of "Good Hair Day" in the titles or headers of magazine articles and online posts describing hair care products and services. Examples include:

    a. "Boca Mag says 'A Good Hair Day Is a Breeze'" http://www.justair.me/2012/11/boca-mag-says-a-good-hair-day-is-a-breeze/.

    b. "Hazlett: The beauty of a good hair day" http://www.pantagraph.com/blogs/hazlett/hazlett-the-beauty-of-a-good-hair-day/article_826bd328-2e77-11e2-865c-0019bb2963f4.html.

    c. "Every Day Is a Good Hair Day: Real Women Model Their Office Hairstyles" http://madamenoire.com/222727/every-day-is-a-good-hair-day-real-women-model-their-office-hairstyles/.

    d. "A good-hair-day arsenal of natural products" http://www.wellandgoodnyc.com/2012/10/16/a-good-hair-day-arsenal-of-natural-products/.

    e. "A Good Hair Day...(that just keeps on giving)" http://www.curlynikki.com/2012/01/good-hair-day.html.

True and accurate printouts of the web pages referenced above are attached hereto as Exhibit D.

30. Numerous videos include "Good Hair Day" in their titles. Indeed, a search of "good hair day" on YouTube retrieves over 14,000 videos, most of which are unrelated to either Jemella or Living Proof, including:

   a. "Have a Good Hair Day with Votre Vu's Cheveux Heureux Shampoo Riche" http://www.youtube.com/watch?v=6sZVsXToyDs.

   b. "Havin' a Good Hair Day! Review - Neutrogena Triple Moisture" http://www.youtube.com/watch?v=qE_1NLqZGvU.

   c. "Good Hair Day…new products 2/23/13" http://www.youtube.com/watch?v=l93co49qzb4.

   d. "Natural Hair: Good Hair Day! Sue Maesta Hooded Band Revisited!" http://www.youtube.com/watch?v=zhKuw_tNlm4.

   e. "Good Hair Day Series August 19 VA" http://www.youtube.com/watch?v=YbDO06Dkb8E.

True and accurate printouts of the web pages referenced above are attached hereto as Exhibit E.

31. Likewise, a number of books contain the phrase "Good Hair Day" in their titles. For example, a search of Amazon.com reveals the following:

   a. *Good Hair Days: A History of British Hairstyling* (1999) http://www.amazon.com/Good-Hair-Days-History-Hairdressing/dp/0704381117/ref=sr_1_5?s=books&ie=UTF8&qid=1369151717&sr=1-5.

   b. *Having a Good Hair Day in an Otherwise Bad Hair Life* (1996) http://www.amazon.com/Having-good-hair-otherwise-life/dp/0965208400/ref=sr_1_7?s=books&ie=UTF8&qid=1369151717&sr=1-7.

   c. *Any Day with Hair Is a Good Hair Day* (2007) http://www.amazon.com/Any-Day-Hair-Good-Through/dp/B0046LUXJ2/ref=sr_1_3?s=books&ie=UTF8&qid=1369151717&sr=1-3.

10

    d.    *Oni's Good Hair Day* (2010)
http://www.amazon.com/Alphabet-Kids-Onis-Good-Hair/dp/0984230165/ref=sr_1_4?s=books&ie=UTF8&qid=1369151717&sr=1-4.

True and accurate printouts of the web pages referenced above are attached hereto as <u>Exhibit F</u>.

32.    Numerous third parties have also used the phrase "Good Hair Day, Every Day" in connection with hair care products and services. A Google search of "have a good hair day every day" retrieves over 300,000 references, including uses in the titles of magazine articles and blog posts such as the following:

a.    **Have a Good Hair Day Every Day**
*Want to wake up each morning with shiny, thick, full hair? Stop dreaming and start using these expert tricks to get gorgeous hair 24/7.*

The above image appears on the website located at http://www.health.com/health/article/0,,20412171,00.html.

b.    **Great Hair Products for a Good Hair Day Every Day!**

The above image appears on the website located at http://www.youtube.com/watch?v=JWKzKvAToOg.

c.    **Have a good hair day, every day!**
March 26th, 2010

The above image appears on the website located at http://www.3yfw.com/2010/03/have-a-good-hair-day-every-day/.

d.    APR 18 **Make Every Day a Good Hair Day**

The above image appears on the website located at http://manentail.com/expert-blog/good-hair-day/).

11

e. **How To Have A Good Hair Day Every Day**

How to have a good hair day every day - "How many times have you heard that

The above image appears on the website located at http://www.britneysbeautyblog.com/2012/08/how-to-have-good-hair-day-every-day.html.

f. **Have a "Good Hair Day" Every Day!**

Written by Gene Bruno, Huntington College of Health Sciences
Wednesday, 28 November 2012 13:39

The above image appears on the website located at http://www.santaclaritamagazine.com/index.php?option=com_content&view=article&id=16881:have-a-good-hair-day-every-day&catid=258:recreation-a-fitness&Itemid=85.

True and accurate printouts of the web pages referenced above are attached hereto as Exhibit G.

33. A Google search of "good hair day every day" retrieves a whopping 1.2 million references. A true and accurate printout of the first page of the Google search results for the phrase "good hair day every day" performed on July 25, 2013 is attached hereto as Exhibit H.

**QVC's is Using "Good Hair Day" as a Generic Program Title and on its Website**

34. Just two weeks ago, the shopping cable channel QVC launched a recurring one-hour program entitled "Good Hair Day," during which hair care products and styling tips were marketed to the general public. QVC created this program and titled it "Good Hair Day" independently, without any input or advice from Living Proof. In its promotional materials, QVC referred to this program as its "new hair care generic." QVC further stated that, "With this combination of products, tips and tools, every day will be a Good Hair Day thanks to QVC."

35. QVC invited several beauty care companies, including Living Proof, to appear on-the-air during this program to market their products. Living Proof accepted this invitation, as did several other hair care companies, namely Alterna, FHI Heat, DryBar and Nick Chavez. On July 12, 2013, representatives of these companies appeared on QVC's "Good Hair Day" program and actively marketed their hair care products.

36. Upon information and belief, QVC has scheduled additional one-hour "Good Hair Day" programs, including one scheduled to air on August 16, 2013.

37. In addition to using "Good Hair Day" as the generic title of its cable program, QVC features the phrase on its retail website featuring hair care and other beauty products. A true and accurate printout of a page from QVC's website, located at http://www.qvc.com/GoodHairDay.content.html, is attached hereto as Exhibit I.

### Jemella Does Not Own Any Trademark Registrations for GOOD HAIR DAY-Formative Marks in the U.S.

38. Jemella does not own any U.S. trademark registrations of GOOD HAIR DAY or GOOD HAIR DAY, EVERY DAY. Jemella owns three U.S. applications to register marks consisting of or containing these phrases in connection with, *inter alia*, various hair care products and services.

39. None of Jemella's applications is based upon prior use in the United States.

40. None of Jemella's applications has yet been approved by the U.S. Patent and Trademark Office.

41. Jemella's above-described U.S. applications are as follows:

    a. GHD GOOD HAIR DAY, EVERY DAY (STYLIZED) as depicted below, Serial No. 85931081.



>
> Jemella filed this application on May 14, 2013 (just two days before it sent its demand letter to Living Proof) on the basis of an intent to use the mark in the United States, and on the additional basis of a prior application to register the mark in the United Kingdom.
>
> b. GOOD HAIR DAY, EVERY DAY, Serial No. 85939282. Jemella filed this application on May 22, 2013 (after it sent its demand letter to Living Proof) on the sole basis of an intent to use the mark in the United States.
>
> c. GOOD HAIR DAY, Serial No. 85939290. Jemella filed this application on May 22, 2013 (again, after it sent its demand letter to Living Proof) on the sole basis of an intent to use the mark in the United States.

**If Jemella's U.S. Trademark Applications Proceed to Registration, They Will Coexist on the Federal Register with Other HAIR DAY-Formative Marks**

42. There are several U.S. registrations and allowed U.S. applications for registration owned by third parties of marks that combine laudatory adjectives or adjectival phrases with the term "HAIR DAY(S)," including the following:

> a. GOOD HAIR DAYS, Reg. No. 2025703 (registered December 24, 1996 and renewed December 24, 2006) for "hairstyling pins and combs for holding hair in place," owned by Good Hair Days, Inc.
>
> b. GREAT HAIR DAY, Reg. No. 3608743 (registered April 21, 2009) for "non-medicated skin care and hair care preparations, namely, cosmetic powders," owned by the Rosenberg Family Trust.
>
> c. BETTER THAN EVER HAIR DAYS, Reg. No. 3971739 (registered May 31, 2011) for "hair conditioner, hair shampoo, hair styling preparations," owned by Helen of Troy Limited.
>
> d. NO MORE BAD HAIR DAYS, Reg. No. 3578422 (registered February 24, 2009) for "hair care kits comprising non-medicated hair care preparations, namely, shampoo and conditioner," owned by Robert Craig Salon Products, Ltd.

   e. END OF BAD HAIR DAYS, Reg. No. 4269612 (registered January 1, 2013) for "education services, namely, providing instruction in the field of personal care and particularly hair styling and maintenance," owned by Heidi Christine's, Inc.

   f. GLAD HAIR DAY, Serial No. 77935683 (allowed August 31, 2010) for "hair care preparations, gel for sculpting hair, hair fixers, hair lacquers, hair relaxing preparations, hair shampoo, hair rinses, hair conditioners," owned by Soap & Glory Limited.

43. Jemella does not have exclusive rights to the phrases "good hair day" and "good hair day, every day" in connection with hair care products.

44. Living Proof would be at a competitive disadvantage if it was prevented from using the phrases "good hair day" and "good hair day, every day," which are commonly used by other companies in connection with hair care products and services, as well as "perfect hair day" (including with the initial letters PHD emphasized and/or used separately).

**COUNT I**
**Declaratory Judgment of Invalidity of Trademark Rights**

45. Living Proof realleges and incorporates herein the allegations set forth in the foregoing paragraphs of this Complaint.

46. The phrases "good hair day" and "good hair day, every day" are commonly used in the hair care field.

47. As used in connection with hair care products, "good hair day" and "good hair day, every day" are merely descriptive of the intended result of the use of those products.

48. Accordingly, Jemella has no valid claim to exclusive rights to use the phrases in connection with hair care products, and any asserted rights to the phrases as trademarks are invalid.

49. As Jemella has insisted on asserting its alleged rights against Living Proof, and has threatened litigation to enforce these alleged rights, an actual controversy exists between

Living Proof and Jemella, and a judicial declaration of the rights of each party is appropriate at this time and under these circumstances.

## COUNT II
### Declaratory Judgment of Trademark Noninfringement

50. Living Proof realleges and incorporates herein the allegations set forth in the foregoing paragraphs of this Complaint.

51. Living Proof's use of the phrases "good hair day," "good hair day, every day" and "perfect hair day" (including with the initial letters PHD emphasized and/or used separately) is not likely to cause confusion with Jemella's alleged trademarks.

52. Living Proof's use of the phrases "good hair day," "good hair day, every day" and "perfect hair day" (including with the initial letters PHD emphasized and/or used separately) does not violate any valid trademark rights or other rights of Jemella.

53. As Jemella has insisted on asserting its alleged rights against Living Proof, and has threatened litigation to enforce those alleged rights, an actual controversy exists between Living Proof and Jemella, and a judicial declaration of the rights of each party is appropriate at this time and under these circumstances.

### REQUEST FOR RELIEF

WHEREFORE, Living Proof requests that this Court:

1. Enter judgment in favor of Living Proof on all counts;

2. Declare that Living Proof's use of the phrases "good hair day," "good hair day, every day," and "perfect hair day" (including with the initial letters PHD emphasized and/or used separately) does not infringe or otherwise violate any rights Jemella purports to have;

3. Declare that Jemella does not have valid trademark rights in "good hair day" and "good hair day, every day" in connection with hair care products;

4. Order that Jemella pay the costs of this action and Living Proof's reasonable attorneys' fees as provided in 15 U.S.C. § 1117 and other applicable law;

5. Grant Living Proof such other and further relief as is just and proper.

Respectfully submitted,

**LIVING PROOF, INC.**

By its attorneys,

/s/ Julia Huston
Julia Huston (BBO #562160)
Charles E. Weinstein (BBO #520280)
Nicole Kinsley (BBO #682528)
Foley Hoag LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
Telephone:  617-832-1000
Facsimile:  617-832-7000
jhuston@foleyhoag.com
cew@foleyhoag.com
nkinsley@foleyhoag.com

Dated:  July 25, 2013

B4156455.2